377 So.2d 275 (1979)
STATE of Louisiana
v.
Donald E. BELL.
No. 64448.
Supreme Court of Louisiana.
November 1, 1979.
Rehearing Denied December 13, 1979.
*277 John Wilson Reed, Robert Glass, Glass & Reed, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Brian G. Meissner, Asst. Dist. Attys., for plaintiff-appellee.
SUMMERS, Chief Justice.
Donald E. Bell was charged on February 6, 1978 with the armed robbery of Salome Helmstetter, a violation of Article 64 of the Criminal Code.
Much of the evidence adduced at the trial was uncontradicted. The defense rested solely on testimony from character witnesses and defendant's claim that he was too intoxicated to remember any of the events the evening of the robbery.
Testimony from the State's case-in-chief established that the defendant entered a bar known as "John L's" about half-past midnight on February 1, 1978. Henry Barthe, Michel Thomas, and an individual called "Slim" were the only patrons. After bumping into Slim and almost starting a fight, defendant asked Salome Helmsetter, the barmaid, for a bottle of bourbon. When she replied that she could only sell liquor by the drink, defendant pulled a .38 caliber revolver from his waistband, grabbed a half-empty bottle, and told everyone to stay put.
Henry Barthe, who was seated next to defendant, commented that the pistol was a Smith and Wesson; whereupon he was ordered by defendant to stand in the far corner of the room. Defendant then walked over to Michel Thomas and hit him with the pistol. Grabbing a full bottle of bourbon, defendant said, "he's tired of getting misused, messed over by his own people." He brought Henry Barthe back to the bar, placed the barrel of the revolver in his face, and threw him to the floor.
As he threw Barthe to the floor, defendant stumbled. Seizing the opportunity Thomas dashed out the door as defendant fired a shot into the ceiling above the door. Outside Thomas hastened to a nearby bar and summoned the police. In the meantime two men entered the bar, the first heading straight for the men's room. As they entered defendant lowered his pistol to his side. He walked behind the second man and ordered him to call his companion out, after which he frisked them.
Defendant then ordered the barmaid to hand over the money in the cash register. As she emptied the change into a bag he pointed the gun at her face and ordered her to give him only paper moneyno coins. With the money he ran out into the street.
When the police arrived they obtained a description of the defendant. Officer Scanlon mentioned he had seen a man meeting that description only a few blocks away, and he set out on foot in pursuit. As Officer Scanlon approached defendant he noticed that defendant changed his pace and pulled something from his jacket. When the officer ordered him to freeze, defendant dropped the money bag into the gutter.
Defendant testified on his own behalf, recounting how he had received a tenure award check for $146 and had cashed it the afternoon of January 31. With this money and $27 he received for work on an automobile, he began drinking that evening at Praut's bar, meeting a contractor and his friend, both of whom he knew only by sight. An hour and a half later he moved on to Rosie's Locker Room, a bar where he encountered a former bartender from Lombard's Bar. Thereafter, he testified, he remembered only an argument about his money being taken from him until he awakened in Charity Hospital.
Following trial defendant was found guilty as charged. After denying a motion for a new trial and for a presentence report the trial judge sentenced defendant on May 5, 1978 to serve fifteen years in the custody of the Department of Corrections. His counsel then moved for an appeal.
*278 While the transcript and record were being prepared for his appeal, defendant by his new counsel, acting pursuant to Article 882 of the Code of Criminal Procedure, filed a motion to set aside the fifteen-year sentence. The motion was based upon the allegation that the trial court had failed to comply with the procedural requirements of Article 894.1(C) of the Code of Criminal Procedure, in that the court did not state for the record the considerations taken into account and the factual basis therefor in imposing sentence. The trial judge denied the motion.
Defendant then sought writs from this Court to review the ruling denying the motion to set aside the sentence. As a result writs were granted vacating the sentence and remanding the case for resentencing in compliance with Article 894.1 of the Code of Criminal Procedure. 366 So.2d 557 (La. 1979). Both the original motion and the writ application were based on the trial court's failure to comply with Article 894.1. However, as counsel frankly asserted, this procedure was employed to have the original sentence set aside and to gain an opportunity to file a broadly based motion for a new trial. The motion was to be premised not only upon newly discovered evidence, but also upon the existence of a prejudicial error and the "ends of justice." While the newly discovered evidence issue could be raised at any time within a year of verdict, the other grounds could only be asserted before sentence, requiring that the original sentence be set aside. La.Code Crim.Pro. art. 853.
On remand defendant filed the contemplated motion for a new trial on January 31, 1979. On the basis that injustice had been done to defendant, the motion alleged that defendant was 42 years old at the time of the incident which gave rise to the charge, he was gainfully employed by the city, and had previously been employed by the police department and criminal sheriff. At that time he was married and living with his wife, had never been convicted of any offense, and had been arrested only once for an incident arising when he was drunk. Admitting that he did in fact take money from the barmaid at gun point, it is nevertheless alleged that the accusation that he robbed for money was inconsistent with his entire life.
The motion also represented that defense counsel at trial failed to call as witnesses the individuals defendant encountered in his claimed drunken state on the night of the robbery to corroborate his story that on that evening he cashed a $146 tenure award check; with the money he started drinking at Prout's bar with a contractor and his friend whose names he did not know. After leaving Prout's he said he went to Rosie's Locker Room for more drinks. An ex-bartender was his drinking companion for part of the time there. After this drinking, Bell testified he had no further recollection of the events of the evening until his recall returned at Charity Hospital. None of these facts were corroborated at trial.
New and material evidence was available, the motion alleged, which, notwithstanding the exercise of reasonable diligence, was not discovered before or during trial. This consisted of the discovery of three persons who saw defendant on the night of the offense who would testify that defendant was drunk. They were Timothy Magruder, a New Orleans Police Officer, Roosevelt Taylor, the proprietor of Rosie's Locker Room; and Earl Wolfolk, a police officer.
Failure of defendant's trial counsel to discover these witnesses, to call an expert to testify that defendant was an alcoholic who could suffer a blackout, and his failure to locate the cashed payroll tenure check to prove lack of motive, allegedly rendered trial counsel's representation ineffective. Defendant was prepared to furnish this proof, it is alleged in the motion.
All of these omissions, according to the motion, suggest a miscarriage of justice even if they do not meet the strict requirements of Article 851(3) and (4) of the Code of Criminal Procedure, which pertain to prejudicial defects and newly discovered evidence, respectively.
*279 The motion was set for trial on February 21, 1979 at which time it was summarily denied and defendant was again sentenced to imprisonment for fifteen years. The judge assigned these reasons for his sentence in an announced effort to comply with Article 894.1 of the Code of Criminal Procedure:
"The defendant does not fall into any of the categories under Section `B' of Article 894.1. Under Section `B' there are eleven sub-sections in which the article says, `The defendant shall be accorded weight in its determination of suspension of sentence or probation.' I shall discount this immediately because the defendant was convicted of armed robbery, and the sentence for same is as follows, viz:
`64. Armed robbery.
B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence.'

"I would have sentenced the defendant for a longer period of imprisonment, but the remarks of counsel for the defendant persuaded me to give the defendant a lesser sentence than I usually would give in a case of this kind. This is incorporated in my remarks in sentencing, and I herewith quote, to-wit:
`I'd just like to point out to the Court that the defendant is thirty-seven; no prior record; has a wife and three children; steady employment record. There are some facts, I think that the Court is aware of slightly, at least, that mitigate the offense.'
"The above, and the following statements and evidence was taken into account, and the facts were a basis, therefore, in imposing sentence as required by Article 894.1, Subsection `C'.
"The factual basis of the sentence is very adequately described by the closing arguments of the attorneys, a certified copy of which I attach hereto, and make a part hereof. Further, I wish to note that this is the entire argument of the attorneys, and upon this factual basis I sentenced the defendant as I did."
This appeal followed:
Assignment 1: The defense points out that in imposing sentence immediately after the denial of the motion for a new trial, the trial court failed to comply with Article 873 of the Code of Criminal Procedure which requires that a sentence shall not be imposed until at least twenty-four hours after a motion for a new trial is overruled. This error is discoverable by a mere inspection of the pleadings and proceedings, and a contemporaneous objection is not required. La.Code Crim.Pro. art. 920(2). It is therefore necessary to remand this case for resentencing. In doing so we will consider the other assignments of error to avoid further appeals on these issues.
Assignment 2: It is contended error occurred when the trial judge denied defendant the opportunity to present testimony and evidence on his motion for a new trial.
As the statement of facts sets forth, the State's closing argument emphasized the failure of the defense to present any evidence at the trial beyond defendant's own testimony which, in essence, was that he did not remember the incident because he was drunk. Thus, according to the prosecution, the law presumed that the missing evidence would be against the defendant. This consisted of the cancelled tenure check and the testimony of defendant's drinking companions that night.
On his motion for a new trial defendant purports to supply this deficiency at the trial by furnishing the missing defense evidence.
To grant a motion for a new trial based on newly discovered evidence, the defendant must show 1) that the evidence was not discovered before or during the trial despite the exercise of reasonable diligence, and 2) that if the evidence had been introduced at trial the jury would probably have returned a different verdict. La.Code Crim.Pro. art. 851(3). The test applied is not whether a new jury might return a *280 different verdict, but whether the additional evidence is so material that it ought to produce a different result. State v. Huckaby, 368 So.2d 1059 (La.1979); State v. Williams, 362 So.2d 530 (La.1978); State v. Boyd, 359 So.2d 931 (La.1978).
In the present case reasonable diligence on the part of trial counsel could not be established to meet that requirement for a new trial. Defendant knew which bars he had entered early in the evening and finding the bar owners or the several patrons who were drinking with him would present no insurmountable problem. These witnesses could have been procured with the exercise of the slightest diligence. The only alternative to this conclusion is that trial counsel made a deliberate choice to rely upon the defense that defendant was drunk and could remember nothing. He may have reasoned that for defendant to recall the witnesses encountered during his alleged drunken spree would contradict to some extent the claim that he could not remember.
The question is, therefore, whether having these witnesses at the trial would have changed the verdict. The newly found witnesses were not present at the scene and would have testified that defendant was intoxicated before the robbery. There is no allegation that those witnesses were in contact with defendant for any appreciable length of time.
On the other hand, three of the State's witnesses had their lives threatened by defendant during a tension-charged twenty-minute confrontation. Defendant shot at one, pistol whipped another, threatened another with his pistol and robbed another at gun point. They testified that though defendant appeared to have been drinking, he was definitely not drunk. He did not stagger when he walked and his speech was not slurred. He ordered the only person present with any apparent knowledge of weapons into the far corner of the room; hid his pistol when new customers entered the bar, then captured and frisked them. In consummating the robbery he demanded only paper money, refusing the bulkier, heavier coins. Finally, he tried to get rid of the money when he spotted the police. His actions belie any claim that he was too drunk to have formed specific intent.
Even if the witnesses would have testified as the motion represents the additional evidence ought not to produce a different result.
Ineffective assistance of trial counsel is also charged in the motion under the general heading that "the ends of justice" would be served by such a finding. In sum the only allegation of ineffectiveness is the failure to press the defense of intoxication.
Trial counsel undoubtedly made a deliberate choice to stand on defendant's testimony that he was so drunk that he could not remember the facts and circumstances surrounding the robbery, and, as a result, the requisite specific intent to commit the crime could not be present.[1] Are we to second guess the effectiveness of that tactical choice at this time? Our hindsight cannot be based on the same considerations which undoubtedly influenced trial counsel, such as the character, attitude and background of the jurors, knowledge acquired by personal observation of them at voir dire; the defendant's demeanor, appearance and ability to articulate and impress his listeners; the State's witnesses' demeanor, appearance and ability to articulate and impress their listeners; the present attitude and past conduct of the trial judge in such cases; and the countless other factors influencing such a choice.
*281 This Court has decided that it would not review the denial of a motion for a new trial alleging "the ends of justice" would be served thereby. La.Code of Crim.Pro. art. 851(5); State v. Matthews, 354 So.2d 552 (La.1978); State v. Williams, 343 So.2d 1026 (La.1977). Furthermore, as we have found, it is more than likely the testimony of the witnesses defense counsel is charged with failing to call would not have brought about a different verdict.
On the basis of the transcripts and the allegation of the motion, the summary denial of a new trial was proper. We are admonished by Article 858 of the Code of Criminal Procedure that "Neither the appellate nor supervisory jurisdiction of the supreme court may be invoked to review the granting or the refusal to grant a new trial, except for error of law." Since no errors of law are present here, the ruling of the trial judge stands.
Assignment 3: Defendant moved for a presentence investigation before sentence. The motion was denied. Article 875 of the Code of Criminal Procedure governs this issue. Its pertinent provisions are:
"A. (1) If a defendant is convicted of an offense other than a capital offense, the court may order the Department of Corrections, division of probation and parole, to make a presentence investigation...." (emphasis added).
As the emphasized portion of the Article makes clear, ordering a presentence report is discretionary with the trial judge. That fact is restated in the official revision comments to the original text of Article 875 in these words:
"Under this article the court may, but is not required to, order a presentence investigation. If a presentence investigation is not ordered, a post-sentence investigation will be made under Art. 876 if a major sentence is imposed."
There is no mandate, therefore, that a presentence investigation be ordered. Such an investigation is an aid to the court and not a right of the accused. Howard v. Maggio, 540 F.2d 1280 (5th Cir. 1976); State v. Howard, 262 La. 270, 263 So.2d 32 (1972).
Defendant's argument that it was an abuse of discretion for the trial judge to deny an investigation is not supported by the facts of this case. Considering the threat to the lives of the patrons of "John L's" bar, the possible penalty of 5 to 99 years authorized for such an offense, the sentence of 15 years actually imposed, and the trial judge's apparent awareness of defendant's background, it cannot be said that he abused his discretion in failing to order an investigation. Obviously, as he stated, the trial judge considered mitigating factors, for he minimized the sentence ordinarily imposed for this crime.
This assignment is without merit.
Assignment 4: According to the defense, the trial judge did not comply with the sentencing guidelines set forth in Article 894.1 of the Code of Criminal Procedure.[2] *282 As a reference to the text of this Article in footnote 2 will disclose, it is divided into three parts: A, B and C.
Part A pertains to the guidelines which concern the trial judge when he is trying to decide whether imprisonment should or should not be imposed.
Part B contains eleven grounds for determining whether the convicted defendant's sentence should be suspended or whether he should be placed on probation.
Neither section A nor B pertain to the sentencing provisions of armed robbery. For that offense Article 64 of the Criminal Code prescribes a mandatory minimum sentence of five years imprisonment "without benefit of parole, probation or suspension of sentence." Therefore imprisonment is mandatory and suspension of sentence and probation are not authorized.
Part C of Article 894.1 is the only provision applicable to armed robbery. It directs the trial judge in imposing sentence to state for the record the considerations taken into account and the factual basis therefor. The trial judge did this as his quoted reasons in the beginning of this opinion indicate. He further adopted as the basis for the sentence the considerations and their underlying facts set forth in the closing arguments of counsel. These are both lengthy and detailed, fully setting forth the facts of the case and the defendant's concession that the offense did in fact occur. His plea was that at the time of the offense defendant was not responsible for his actions because of his intoxication, a theory obviously unacceptable to the jury. It is equally obvious that the trial judge did consider as mitigating factors the testimony of the character witnesses for the defense referred to in defense counsel's closing argument. For, as the trial judge noted, such an offense usually involves a sentence of thirty years or more instead of the fifteen-year sentence imposed here.
Evidently the trial judge made a conscientious effort to comply with the guidelines set forth in the applicable provision of Article 894.1. His reasons and the extensive considerations and the factual basis for the sentence are fully set forth in the closing arguments of counsel. While it would be preferable for the trial judge to particularize these considerations instead of incorporating such lengthy arguments in globo by reference, his reasons for sentencing are ascertainable. On remand for resentencing the trial judge is instructed to point out from the arguments the particular considerations and factual basis therefor which influenced the sentence.
Assignment 5: During closing argument, trial counsel for the defendant attempted to acquaint the jury with the penalty provision for armed robbery and simple robbery. When the prosecutor objected the objection was sustained. In State v. Blackwell, 298 So.2d 798 (La.1974), an armed robbery prosecution, this Court held that a trial court had the discretion to refuse argument involving penalty. That case is dispositive of this issue.
For the reasons assigned the conviction is affirmed, and the case is remanded to the trial court for resentencing in accordance with this opinion.
TATE, J., concurs and assigns reasons.
DIXON and CALOGERO, JJ., concur.
DENNIS, J., concurs for the reasons assigned by TATE, J.
TATE, Justice (concurring).
I concur in the affirmance of the conviction and the remand for re-sentencing, with the following reservations:
*283 (1) I disagree with the statement in the majority opinion that this court does not review the denial of a motion for a new trial, when grounded in the allegation that "the ends of justice" would be served thereby. This court may and will review whether the trial court's discretion has been abused in the denial of a new trial sought on this ground as well as others (although, of course, according great weight to the trial court's determination). State v. Randolph, 275 So.2d 174 (La.1973); State v. Truax, 222 La. 463, 62 So.2d 643 (1952); State v. Gardner, 198 La. 861, 5 So.2d 132 (1941).
However, I do not find that the trial court's discretion has been abused herein, although the issue is not free from doubt.
(2) I further disagree with the majority's pronouncement that La.C.Cr.P. art. 894.1 does not apply (insofar as requiring a sentencing application and evaluation of aggravating and mitigating factors), to a conviction for armed robbery, because it requires imprisonment. The statute itself plainly provides for its application whenever the defendant has been convicted of a felony. We ourselves have noted that compliance with the statute enables us better to exercise our constitutional function of reviewing the excessiveness of the sentence. State v. Sepulvado, 367 So.2d 762 (La.1979).
In the present instance, however, our remand to require the trial court to explicate the factual basis for the sentence will, in effect, exact compliance with the statute. We will be able to review excessiveness on the appeal, if any, from any subsequent sentence to be imposed on the remand.
(3) The majority opinion is ambiguous as to whether it is departing from our usual practice [1] of not reviewing on the appeal any contention of ineffectiveness of trial counsel. I assume we have not here reviewed the issue.
A strong case could be made that ineffective representation is shown by the failure to call witnesses to prove a substantial defense of intoxication, his sole viable defense. Presumably, the accused's rights to advance this claim by appropriate post-conviction proceedings, including an evidentiary hearing, is not prejudiced by dicta about the issue in the majority opinion.
NOTES
[1] La.Rev.Stat. 14:15 provides:

"The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except as follows:
(1) Where the production of the intoxicated or drugged condition has been involuntary, and the circumstances indicate this condition is the direct cause of the commission of the crime, the offender is exempt from criminal responsibility.
(2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime."
[2] Art. 894.1 provides:

"A. When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if:
(1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime;
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; or
(3) A lesser sentence will depreciate the seriousness of the defendant's crime.
B. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of sentence or probation:
(1) The defendant's criminal conduct neither caused nor threatened serious harm;
(2) The defendant did not contemplate that his criminal conduct would cause or threaten serious harm;
(3) The defendant acted under strong provocation;
(4) There was substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
(5) The victim of the defendant's criminal conduct induced or facilitated its commission;
(6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained;
(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the instant crime.
(8) The defendant's criminal conduct was the result of circumstances unlikely to recur;
(9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime.
(10) The defendant is particularly likely to respond affirmatively to probationary treatment; and
(11) The imprisonment of the defendant would entail excessive hardship to himself or his dependents.
C. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence."
[1] The writer has been of the view that claims of ineffective trial counsel should preferably be disposed of (by motion for new trial or by habeas writ during the pendency of the appeal) before or at the time the appeal is decided. The evidence is then fresh, while at the same time the finality of the conviction might be conclusively and expeditiously determined by a unified criminal appeal, without the necessity for duplicative and protracted post-conviction proceedings. This view has not, as yet, been accepted by a majority of this court.